IN THE UNITED STATES DISCTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANGELICA ARTEAGA | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. _____ |
| | § | |
| PDVSA SERVICES, INC. | § | |
| | § | |
| Defendant. | § | **(JURY TRIAL DEMANDED)** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff, Angelica Arteaga, filing her Original Complaint complaining of Defendant, PDVSA Services, Inc., (PDVSA) and in support thereof would show as follows:

**I.
JURISDICTION, PARTIES, AND VENUE**

1.1 This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant to: (i) Title VII of the Civil Rights Act of 1964, as amended and (ii) 42 U.S.C. Section 1981.

1.2 Angelica Arteaga resides in Harris County, Texas. Plaintiff Arteaga is protected by Title VII and 42 U.S.C. Section 1981. Plaintiff Arteaga was at all relevant times an employee within the meaning of the applicable statutes.

1.3 Defendant operates in Houston, Texas. Defendant was at all times Plaintiff's employer within the meaning of the aforementioned applicable statutes.

1.4 Defendant engaged in an industry affecting commerce and employed more than fifteen (15) regular employees.

1.5 The employment practices alleged to be unlawful herein were committed within the Southern District of Texas, Houston Division. Venue is appropriate in this Court.

**VICARIOUS LIABILITY – RESPONDEAT SUPERIOR**

1.6 Whenever in this complaint it is alleged that Defendant did any act or thing, it is meant that the Defendant's supervisors, agents, servants, employees, or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of Defendants, or was done in the normal and routine course and scope of employment of Defendant's supervisors, agents, servants, employees, or representatives.

1.7 The acts of management were performed while in the employment of Defendant, to further Defendant's business, to accomplish the objective for which said managers were hired, and within the course and scope of that employment or within the authority delegated to said employees.

## II.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

2.1 Plaintiff Arteaga filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission. In that Charge, No. 460-2018-00570, and any amendments and/or attachments thereto, Plaintiff Arteaga asserted that Defendant discriminated against her based on her race and national origin, and retaliated against her after she lodged internal complaints of, and opposition to, discrimination based on race, gender, and national origin of others.

2.2 Therefore, Plaintiff was forced to file this suit in order to protect her employment rights. Plaintiff has exhausted her administrative remedies and files this suit within the statutory limitations period.

### III.
### FACTUAL BACKGROUND

3.1 Angelica Arteaga, Mexican American, remembers fondly the day she was invited to interview with PDVSA Services Incorporated (hereinafter "PDVSA").  She prepared for, and attended, the interview.  There, she met General Manager Yllermina Celis.  Ms. Celis seemed pleasant enough until she began asking Plaintiff Arteaga questions that were far outside the scope of lawfully permissible questions. Ms. Celis asked about Plaintiff Arteaga's age, marital status, whether she had children, and the country of her national origin. This greatly concerned Plaintiff Arteaga.  Plaintiff Arteaga assured Ms. Celis that she was the best person for the job despite her personal background.

3.2    On or about October 2, 2017, Plaintiff Arteaga began employment with the Defendant as a Human Resources Supervisor in very high spirits and determined to make good of this opportunity. Plaintiff Arteaga went to work and worked as hard as she could. Plaintiff Arteaga did her best to fit in and was never a disciplinary problem. Simply put, she worked impeccably and without incident.

3.3    Plaintiff Arteaga took personal pride in her work.  She was happy.  But things were about to change…. for the worse.

3.4    Plaintiff Arteaga was given a curious assignment.  She was initially ordered to handle the paperwork so that PDVSA could sponsor an employment-based permanent

residence visa for General Manager Celis.[1]  She gathered all the applicable paperwork including PDVSA's internal policies (e.g., Company Sponsorship for Permanent Resident Status) related to my task and reviewed them carefully. Plaintiff Arteaga had serious concerns based on her review including learning that employees from *other* countries besides Venezuela were also interested in same.

3.5    Armed with all this information, Plaintiff Arteaga informed General Manager Celis that: (i) PDVSA's policies did not allow it to sponsor her for residency **and** (ii) there could be an outcry of discrimination by other employees who wanted the same company sponsorship. In response, General Manager Celis said curtly, "I'm the general manager and I can change the policy.  You need to change the policy [to allow for it] and I will sign off on it."

3.6    Stunned, Plaintiff Arteaga relayed the aforementioned to Finance Manager Tim Marshman. The consensus was that Plaintiff Arteaga should get the professional opinion of an attorney who specializes in employment law.

3.7    Plaintiff Arteaga next contacted Attorney Amit Misra for legal guidance on or about October 27, 2017.  Mr. Misra affirmed that Plaintiff Arteaga's concerns regarding legal exposure were legitimate and reduced his opinions to writing on October 30, 2017.

3.8    In the interim, General Manager Celis upped her ask.  She ordered that Plaintiff Arteaga also work on sponsorship for Venezuelan Secretary/Assistant Carol Romero. On its face, Ms. Romero did not qualify for sponsorship pursuant to the Company Sponsorship

---

[1] At the time of Plaintiff Arteaga's employment, Ms. Celis was presently working in the United States on a temporary work visa from Venezuela.

for Permanent Resident Status policy on more than one front. General Manager Celis remedied this by ordering that the policy be amended to ***also*** allow for sponsorship of Ms. Romero.

3.9     Plaintiff Arteaga verbalized her opposition to selectively sponsoring some foreign nationals and not others and women and not men.  Plaintiff Arteaga advocated consistency and equality regardless of national origin and gender.  General Manager Celis became viscerally upset. She flatly refused to sponsor employment -based visas for those employees who were non-Venezuelan born and male.

3.10    Even after General Manager Celis read the legal opinion of Attorney Misra, she remained steadfast in her position. She told Plaintiff Arteaga that Plaintiff Arteaga was "over-reacting."  She threatened that Plaintiff Arteaga should not tell anyone about her mandate. *And,* General Manager Celis assured Plaintiff Arteaga that such was "not discrimination."

3.11    Plaintiff Arteaga was extremely nervous.  Plaintiff Arteaga had already emailed the Board of Directors seeking clarity on such mandate and now General Manager Celis had ordered her silence.  Corporate Compensation and Benefits Management Lisbeth Andreina Ruiz responded quickly.  She interrogated m Plaintiff Arteaga about General Manager Celis' request for sponsorship.  Ms. Ruiz asked Plaintiff Arteaga to reduce General Manager Celis' mandates to writing; Plaintiff Arteaga complied.

3.12    On or about November 8, 2017, Plaintiff Arteaga told General Manager Celis that she had been communicating with the Board of Directors and Ms. Ruiz – specifically – about the sponsorship application process. General Manager Celis became livid.  She

retorted, "You were not supposed to go to them." General Manager Celis kept shaking her head and saying, "No. No. No." General Manager Celis forbade Plaintiff Arteaga from attending any more work-related meetings slated for that day.

3.13   The next day, Plaintiff Arteaga observed General Manager Celis in a sense of panic. In fact, General Manager Celis refused to even speak with Plaintiff Arteaga. Plaintiff Arteaga phoned Ms. Ruiz for help.  Ms. Ruiz responded, "You did nothing wrong."

3.14   Anxiety and worry set in for Plaintiff Arteaga.  she felt very ill.  Consequently, Plaintiff Arteaga took Friday, November 10, 2017 off.  Despite recuperating at home, Plaintiff Arteaga asked Ms. Ruiz to intervene.  Plaintiff Arteaga felt her job was in jeopardy.   Plaintiff Arteaga was right.

3.15   Monday, November 13, 2017, Plaintiff Arteaga reached out to Ms. Ruiz again. Plaintiff Arteaga wanted assurances that Plaintiff Arteaga would not be retaliated against for her advocacy for fairness. Plaintiff Arteaga did not hear back from Ms. Ruiz.

3.16   Next, Plaintiff Arteaga utilized the company's grievance policy.  She had no choice but to inform General Manager Celis that she [Plaintiff Arteaga] essentially wanted to complain formally *about* Ms. Celis' unfair business practices.  It was awkward nonetheless, but it was Defendant's policy. And in turn, Ms. Celis thanked me for Plaintiff Arteaga's services and discharged her.

## IV.
## CAUSES OF ACTION

**A. NATIONAL ORIGIN DISCRIMINATION PURSUANT TO TITLE VII AND 42 USC SECTION 1981**

4.1 Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

4.2 Defendant engaged in unlawful national origin discrimination by subjecting Plaintiff Arteaga to assignments that required her to discriminate against PDVSA's employees in regards to their national origin as outlined above.

4.3 The above-described assignments created an intimidating, oppressive, hostile environment, which interfered with Plaintiff's emotional and physical well-being.

4.4 Defendant at all times relevant hereto had actual knowledge of the conduct described in the paragraphs above in large part because of Plaintiff's outcries and the open and obvious nature of the misconduct that permeated.

4.5 As a result of the hostile and offensive environment perpetrated by Defendant through its agents, supervisors, or employees, and maintained by Defendant's failure to protect Plaintiff Arteaga from further discrimination and instead causing the discharge of Plaintiff Arteaga caused her to suffer severe emotional distress and physical injury.

4.6 As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination against Plaintiff Arteaga through its agents, supervisors, or employees, Plaintiff Arteaga has suffered and will continue to experience pain and suffering, and extreme and severe mental anguish and emotional distress; she has incurred and/or will incur medical expenses for treatment by healthcare professionals, and for other incidental expenses; and she has suffered and/or will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff Arteaga is thereby entitled to general and compensatory damages in amounts to be proven at trial and all other relief outlined further herein as per statutory relief.

B. **RACE DISCRIMINATION PURSUANT TO TITLE VII AND 42 USC SECTION 1981**

4.7 Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

4.8 Defendant, through its agents, supervisors, and employees engaged in unlawful race discrimination by subjecting Plaintiff Arteaga to assignments that required her to discriminate against PDVSA's employees in regard to their race as outlined above.

4.9 The above-described assignments created an intimidating, oppressive, hostile environment, which interfered with Plaintiff's emotional and physical well-being.

4.10 Defendant at all times relevant hereto had actual knowledge of the conduct described in the paragraphs above in large part because of Plaintiff's outcries and the open and obvious nature of the misconduct that permeated.

4.11 As a result of the hostile and offensive environment perpetrated by the Defendant through its agents, supervisors, and employees, and maintained by Defendant's failure to protect Plaintiff Arteaga from further discrimination and instead causing the discharge of Plaintiff Arteaga caused her to suffer severe emotional distress and physical injury.

4.12 As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination against Plaintiff Arteaga through its agents, supervisors, and employees, Plaintiff Arteaga has suffered and will continue to experience pain and suffering, and extreme and severe mental anguish and emotional distress; she has incurred and/or will incur medical expenses for treatment by healthcare professionals, and for other incidental expenses; and she has suffered and/or will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff Arteaga is thereby entitled to general

and compensatory damages in amounts to be proven at trial and all other relief outlined further herein as per statutory relief.

## C. RETALIATION PURSUANT TO TITLE VII AND 42 USC SECTION 1981

4.13 Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

4.14 After challenging the discrimination of PDVSA's employees based on their national origin, gender, and race as outlined above, Plaintiff Arteaga was subsequently harassed, isolated, and discharged.

4.15 Defendant had no legitimate business reasons for any such acts. Each act of retaliation is in violation of Title VII and 42 USC Section 1981's anti-retaliation provisions.

4.16 As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination and retaliation against her, Plaintiff Arteaga has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff Arteaga is thereby entitled to general, compensatory, and punitive damages in amounts to be proven at trial and all other and further relief outlined further herein as per statutory relief.

4.17 The above-described acts of Defendant's part were undertaken in violation of Title VII and 42 USC Section 1981 and proximately caused Plaintiff Arteaga substantial injuries and damages.

## V.
## JURY DEMAND

5.1 Plaintiff requests that this action be heard before a jury.

# VI.
# DAMAGES

6.1 Defendant's conduct constitutes violations of statutory and common law. Such unlawful conduct seriously affects Plaintiff Arteaga in her occupation, trade, and business. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer humiliation, stress, and other damages. Plaintiff has suffered direct injury as a proximate result of the unlawful practices, policies, and procedures of the Defendant. Accordingly, Plaintiff Arteaga seeks all general, special, incidental, economic, compensatory, punitive, and consequential damages in an amount to be proved at trial including punitive damages.

6.2 Because of Defendant's unlawful and tortuous conduct, it has been necessary for Plaintiff Arteaga to retain the undersigned attorney to represent her in these causes of action. Plaintiff has agreed to pay her attorney reasonable attorney's fees for the preparation and trial of these causes, and further for any appeal thereof should same become necessary.

6.3 Additionally, Plaintiff Arteaga has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve her ability to earn a living. Accordingly, Plaintiff Arteaga seeks all general, special, incidental, and consequential damages as shall be proven at trial.

6.4 Further, Plaintiff Arteaga seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to the Defendant. Plaintiff Arteaga also seeks post-judgment interest at the maximum rate

allowed by law in the event the Defendant does not promptly tender damages assessed against them and to avoid unjustly enriching the Defendant.

## VII.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that the Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against the Defendant for:

a. Permanent injunction enjoining the Defendant, its agents, successors, employees, and those acting in consort with the Defendant from engaging in any employment practice which discriminates on the basis of national origin, race, and gender and participates in retaliation as outlined above;

b. All damages to which Plaintiff may be entitled pursuant to this Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering in the past and future;

d. Punitive damages in an amount above the minimum jurisdictional limit of the Court;

e. Reasonable attorney's fees with conditional awards in the event of appeal;

f. Pre-judgment interest at the highest rate permitted by law;

g. Post-judgment interest from the judgment until paid at the highest interest rate permitted by law;

h. Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

i. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

Respectfully submitted,

*/s/ Katrina Patrick*

_____

Katrina Patrick
Attorney-in-Charge
Federal Bar No. 22038
6575 West Loop South, #500
Bellaire, Texas 77401
(713) 796.8218 – Telephone
(281) 399.5537 – Facsimile
katrina@voiceoftheemployees.com

ATTORNEY FOR PLAINTIFF
ANGELICA ARTEAGA